[No. 5253.    Decided November 14, 1904.]

# JACOB SWOPE et al., Plaintiffs, v. CITY OF SEATTLE et al., Defendants.[1]

EMINENT DOMAIN—INJUNCTION AGAINST CITY IMPROVEMENT UN-
TIL DAMAGES ARE PAID—DAMAGES—ASSESSMENT BY JURY WITH-
OUT REGULAR CONDEMNATION PROCEEDINGS.    Where an action,
is brought by an abutting property owner to enjoin a city from
further damaging the plantiffs' property in improving a street,
until compensation shall first be paid therefor, and a jury is called
at plaintiffs' request for the purpose of assessing damages, it is.
not error to submit to the jury, over plaintiff's objection, the
question of what future damages the plaintiffs will suffer by the
city's completion of the improvement, where no prejudice appears
from the mere fact that the damages were not ascertained by a
jury impaneled in a regular condemnation proceeding.

JURORS—CHALLENGE. In an action against a city, a challenge to
a juror for implied bias solely because he had performed clerical
work for the city is properly denied.

EVIDENCE—EXPERTS—LIMITING NUMBER.    It is within the discre-
tion of the court to limit the number of expert witnesses called to
testify to the value of land.

EMINENT DOMAIN—EVIDENCE—DAMAGES.    In an action to ascer-
tain the damages to abutting owners by a change of grade, it is
proper to exclude mortality tables showing the expectancy of
plaintiffs' lives, and, also, evidence as to the effect upon their
health that might result from climbing the flight of steps made
necessary by the improvement.

SAME—STATEMENTS BY CONTRACTOR—HEARSAY.    In such an
action it is proper to exclude the statements of the contractor as
to plaintiffs' damages, since that would be hearsay as against the
city.

SAME—DAMAGES—VALUE OF SOIL.    Where an abutting lot is
sloped off to meet a change of grade in the street, the soil which
is removed is not land taken, and the actual value thereof is not
to be added to the damages to the land not taken.

APPEAL—TRIAL—READING LAW TO JURY—INSTRUCTIONS.    Error
can not be predicated upon the refusal of the trial court to allow

[1]Reported in 78 Pac. 607.

8-36 WASH.

counsel to read a decision of the supreme court to the jury, where the instructions which were given to the jury are not brought up in the record.

APPEAL AND ERROR—REVIEW—AMOUNT OF RECOVERY. Error in that the amount of a verdict was too small cannot be urged in the supreme court when the evidence upon which the same was based is not included in the record on appeal.

Certiorari to review a judgment of the superior court for King county, Morris J., entered July 1, 1904, upon findings in favor of the defendant, after an assessment of damages by a jury, in a proceeding to enjoin the damaging of abutting property by the improvement of a street. Affirmed.

*C. L. Parker,* for plaintiffs.

*Mitchell Gilliam, Wm. Parmerlee,* and *Hugh A. Tait,* for defendants.

ANDERS, J.—The plaintiffs were, at and before the commencement of this action, the owners of, and were residing upon, lots 13 and 14 in block 20, in Brooklyn Addition to the city of Seattle, which premises are situated on the northeast corner of Tenth avenue southeast and Fortieth avenue east, in said addition to the city of Seattle. The city, having concluded to grade the streets above mentioned, in front of and adjoining the property of the plaintiffs, in accordance with an ordinance authorizing (as it alleges) such improvement, was proceeding by its servant and contractor, William Stanley, to lower the surface of the streets, and to slope the property of the plaintiffs from the natural surface thereof down to the street grades established by the city. The top of the slope which the city was making seems to have been from 16 to 18 feet back from the margin of the street, and the object of making

it was to prevent the soil from sliding down on to the street.

After this work had progressed to some extent, the plaintiffs instituted an action in the superior court of King county to enjoin the city, its board of public works, and the contractor, from proceeding further "until just and lawful compensation shall be made to the plaintiffs for taking and damaging the said premises." Upon the filing of the complaint, a preliminary injunction was issued, and a hearing was subsequently had on an order to show cause why the same should not be made permanent. At this hearing the plaintiffs, by their counsel, paid the statutory jury fee, and requested the court to call a jury, presumably to determine the damages which would result to their property by reason of the grading of the streets and the removing of earth from their premises. A jury was accordingly impaneled, and the question of the amount of damages which would be sustained by the plaintiffs on account of the making of the proposed improvement was by the court submitted to them for determination. It seems, however, that the plaintiffs suggested to the court at the trial that the jury ought to be authorized to assess only the damages which had already been sustained by plaintiffs because of the wrongful acts of the defendant city, and not such as would thereafter accrue by reason of the completion of the proposed improvement; but the court, as we have seen, did not favorably consider that suggestion. The jury returned a verdict in favor of the plaintiffs, and assessed their damage, over and above all special benefits, in the sum of $100. The court, after overruling a motion for a new trial, entered judgment on the verdict, and the plaintiffs thereupon applied to this court for a writ of certiorari to review the proceedings of the court

below.　The writ was granted, and a transcript of the rec-
ords and proceedings was accordingly certified to this
court.　On the return day of the writ a hearing was had,
both parties being represented by counsel, and the cause
was submitted for final determination.

It is contended, on the part of the plaintiffs, that the
trial court had no right or power to submit to the jury,
in this equitable proceeding, the question of the amount of
compensation to be made to plaintiffs for taking or dam-
aging their property; and, in support of this contention,
it is earnestly insisted that the method provided by the
legislature, whereby private property may be appropriated
by cities of the first class for street purposes, is exclusive
and must be pursued in all cases.　Our statutes prescribe
just what steps shall be taken by cities of the first class,
when they undertake to condemn private property for the
purpose of changing the grades of streets.　Bal. Code
§ 775, *et seq.*　It is provided, in substance, among other
things, that, whenever such city shall have passed an or-
dinance providing for appropriating or damaging private
property for public use, it shall file a petition in the su-
perior court of the county in which such city is situated,
in the name of the city, praying that just compensation,
to be made for the private property to be taken or damaged
for the improvement or purpose specified in such ordi-
nance, "be ascertained by a jury or by the court in case a
jury be waived."　The statute then prescribes what the
petition shall contain.　It also provides for the issuance
of a summons, and the service thereof upon the persons
made parties defendant in the proceeding.　It is admitted
that the city did not, prior to the commencement of the
improvement in question, file a petition in the superior
court praying that just compensation, to be made for the

taking or damaging of the property of the plaintiffs, be ascertained in the manner provided in the statute above mentioned.

This statute, prescribing the procedure in cases where it becomes necessary to appropriate or damage private property for public use, was evidently enacted for the sole purpose of establishing a reasonable and certain method of ascertaining the just compensation which the constitution declares "shall be first made or paid into court for the owner". of the property sought to be taken or damaged. Const. art. 1, § 16. And we have no doubt that, under the law and the constitution of this state, a corporate body, having the right to exercise the power of eminent domain, may be enjoined from taking or damaging private property for public use until just compensation is made or paid into court for the owner. In fact, this question has been definitely settled by former adjudications of this court. See *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385; *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201. But is must be conceded that the provisions of the statute, and the constitution above referred to, apply only to cases where private property is to be taken or damaged *in invitum,* and that neither the law nor the constitution precludes the owner from voluntarily agreeing that his property may be taken, either for a stipulated compensation, or without any compensation whatever. It does not appear that the city was in this instance proceeding arbitrarily and in defiance of law and of the rights of the plaintiffs. On the contrary, it was acting upon the belief, as shown by its answer to the complaint, that the plaintiffs had agreed that, if it would "slope" the sides of their property adjacent to the streets, as it commenced to do, they would not claim any damages on account of the im-

provement. And, if such was the case, it was, of course, unnecessary for the city to institute condemnation proceedings for the purpose of ascertaining the damage to plaintiffs' premises. The plaintiffs denied, in their reply to the city's answer, that they ever entered into the alleged agreement with the city or any of its representatives, and their counsel now claims that the plaintiffs were deprived of their constitutional and legal rights by reason of the submission of the question of damages to the jury which was impaneled in this proceeding. And the argument is, as we understand it, that, inasmuch as this particular jury was not summoned by the defendant city in a proceeding instituted by it for the purpose of ascertaining the compensation to which the plaintiffs were entitled, the court was not warranted in permitting and directing them, over the plaintiffs' objection, to assess the damage which would be occasioned to the property of the plaintiffs by the making of the contemplated improvement.

It is, perhaps, needless to say that it was not necessary to have the assistance of a jury in order to obtain an injunction against the defendant. The plaintiffs could have accomplished that object simply by proving that their property was being taken or damaged by the defendant without their consent, and without first making just compensation therefor. The plaintiffs, however, demanded a jury, which, as we have observed, was duly impaneled. But, notwithstanding the fact that plaintiffs' counsel had himself asked the court to call the jury, he objected to the submission of the question of the amount of plaintiffs' damages to such jury for the alleged reason, it seems, that that question could legally be determined only by a jury selected in a condemnation proceeding instituted by the city in accordance with the

provisions of the statute. The court, however, concluded that the plaintiffs could not be prejudiced by the determination of the amount of their damages at that time by the jury; that the constitution only requires the amount of damages to be ascertained by a jury, and that there was no necessity for a multiplicity of suits. And, under the circumstances, we think the conclusion of the court was right. If it was not the original intention of the plaintiffs to submit the question of damage to the jury, it is difficult to understand the object they had in view in asking the court to call a jury. It certainly can not be reasonably assumed that the plaintiffs were, as they seem to argue, prejudiced by the mere fact that the damages sustained by them were not ascertained by a jury impaneled in a regular condemnation proceeding instituted by the defendant city. They had the right to have the amount of their damages determined by an impartial jury, and we have discovered nothing in the record showing that they were deprived of that right.

The plaintiffs complain of the action of the court in overruling their objection to one of the jurors on the ground of implied bias. It appears that the juror was objected to solely for the reason that, at a time prior to the trial, he had performed some clerical work for the city. The challenge was properly denied.

During the progress of the trial the plaintiffs offered in evidence certain mortality tables showing the expectancy of their respective lives, for the alleged purpose of showing the length of time "during which the extra burden and inconvenience placed upon the plaintiffs in the use of their home, and the extra steps that the plaintiffs would be obliged to climb up and down in going to and from their property, on account of the proposed change in the grade of the streets abutting on their said

property." The court excluded the evidence so offered, and the plaintiffs contend that it thereby committed error. But plaintiffs' counsel has not mentioned any principle or rule of law thus violated or ignored by the court, and it would seem to require no extended argument to demonstrate the propriety of the ruling in question. And the same may be said with regard to the action of the court in refusing to permit a physician to testify as to the injurious effect which would, or might be, caused upon the health of a woman by climbing "such a flight of steps as is necessary to be constructed at the plaintiffs' premises to enable them to get to and from their residence after the streets are graded as proposed." The court refused to permit the respective parties to examine more than three real estate expert witnesses as to the value of the plaintiffs' premises. That was a matter resting largely in the discretion of the court, and we are not convinced that such discretion was abused, or that the plaintiffs were injuriously affected by the ruling of the court.

It is also contended that the trial court erred in refusing to permit one Mrs. Fraser to testify to certain statements made to her by the defendant contractor, William Stanley, at the time he commenced to grade the streets, and to slope the plaintiffs' premises, in regard to plaintiffs being entitled to damages. It is argued, on behalf of the plaintiffs, that the statements of Stanley were, under the circumstances, part of the *res gestae,* and therefore admissible in evidence. But we are not of that opinion. As to the city, such declarations were but hearsay evidence, and for that reason, if for no other, they were properly excluded from the jury.

It appears from the bill of exceptions, as we interpret it, that the plaintiffs claimed, at the trial, that the removal of the soil taken from the plaintiffs' premises in sloping

the margins thereof constituted a taking of property in contemplation of the constitution, and that they were entitled to recover the actual value to them of the earth so removed, together with the damage to the land not taken, which would be caused by the grading of the streets. The court, however, seems to have ruled that the effect of what the defendants were doing was simply a damage to the plaintiff's property; and we are inclined to think that the court's ruling was correct; but, even if it was not, we fail to see how plaintiffs were prejudiced thereby, inasmuch as it was for the jury to determine, from all the facts and circumstances in evidence, the "just compensation" to which the plaintiffs were entitled by reason of the *acts* and *doings* of the defendants.

The next assignment of error relates, apparently, to the evidence as to the character and extent of the slope that the city was making, as it claims, for the plaintiffs. The evidence as to that matter was conflicting, and we are unable to say that the jury did not determine it correctly.

It is further contended that the court erred in refusing to instruct the jury in accordance with the law as laid down by this court in the case of *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, and in refusing to allow plaintiffs' counsel to read the decision in that case, and to state to the jury that the doctrine there announced should be approved and applied to this case. The instructions given by the court to the jury are not embodied in the record before us, and we would not, therefore, be justified in concluding that the jury was not properly instructed as to the law applicable to the case at bar. And, inasmuch as it was the duty of the judge under the constitution to "declare the law" to

the jury, we are of the opinion that he committed no error in not permitting the jury to be enlightened upon the matters of law in the manner attempted by counsel.

In regard to the verdict, the plaintiffs claim, among other things which we do not deem it necessary to mention, that the amount of their recovery is too small, and that they are therefore entitled to a new trial. But these are questions which we are unable to determine, for the reason that the evidence upon which the jury and the trial judge based their conclusions is not in the record.

We find no substantial error in the record, and the proceedings in the superior court are therefore affirmed.

HADLEY, MOUNT, and DUNBAR, JJ., concur.