70 Wn.2d 12 (1966)
421 P.2d 1021
THE CAMPING COMMISSION OF THE PACIFIC NORTHWEST CONFERENCE OF THE METHODIST CHURCH, Respondent,
v.
OCEAN VIEW LAND, INC., Appellant.[*]
No. 38112.
The Supreme Court of Washington, Department Two.
December 22, 1966.
Charles B. Welsh and Brodie, Fristoe & Taylor, for appellant.
Kirkwood & Burtch, for respondent.
BIRDSEYE, J.[]
This is an action to quiet title to certain ocean front property in Pacific County and involves the plat of Ocean Park Beach.
In 1924, L.E. Loomis and his wife, being the owners of certain coastal property, filed with their county officers a plat of an area referred to in the instrument as:
[A]ll of Government lots Nos. 1, 2, 3 & 4 Section 20, Township 12 North, Range 11 West of the Willamette Meridian, being more particularly described as follows.
Beginning at the S.E.Cor. of Sec. 20, T.12 N., R. 11 W. which is marked by a Red Wood post 4"x6"x5' showing 2' above ground. Thence N. 1° 15' W. along the east line of said Sec. 20 a distance of 5282.20' to the N.E.Cor. of said Sec. 20, designated by a Red Wood Post 4"x6"x5' showing 2' above ground. Thence West 637.04' to mean high tide line on the shore of the Pacific Ocean. Thence S. 2° 28' E. along said mean high tide line a distance of *13 5285.85' to the South line of said Sec. 20. Thence east 524.74' to the place of beginning, containing 70.42 acres.
The plat has on its face an engineer's drawing or map showing four blocks (A, B, C and D) separated by roadways and each divided into 50 lots. The latter have their complete and exact dimensions written in; they run east and west, are approximately 25 feet in width and vary in depth from 606.18 feet at the north end to 495.59 feet at the south.
The drawing on the plat shows the western boundary as a straight line and bears on it a reference to course and distance as well as the words "Ordinary or Mean High Water Line." Between this line and the designation "Pacific Ocean" appears an area labeled "Ocean Beach Boulevard" and in parenthesis is the explanation "Note: Ocean Beach Boulevard extends from Mean High Water Line to Mean Low Water Line in width."
This litigation arises from the fact that at the date of the plat, October 23, 1924, the high tide line was very probably somewhat to the west of the west line established by the courses and measurements given on the plat and that this distance has increased to more than 600 feet during the last 40 years. The precise problem is whether the courses and distances given on the plat govern the location of the latter's west line, or whether the reference to the mean high tide line control.
Both parties trace their claims to L.E. Loomis, whose title dates back to 1916 when he acquired government lots 1, 2, 3 and 4 in section 20. Respondent now owns lots 3 to 50, inclusive, in block C, and lots 1 to 25, inclusive, in block D, all in Ocean Park Beach, claiming title through a predecessor who bought the property at a tax foreclosure sale. Both deeds describe the conveyed property by designation of blocks and lots in the plat referred to.
Appellant asserts title through a predecessor in interest who obtained quitclaim deeds "to all land lying westerly of the western boundary of Ocean Park Beach plat" from the heirs of the original dedicators of the plat for considerations totaling $150.
*14 Is there any such privately owned land to the west of respondent's property? Our answer is in the negative.
Chapters 105 and 110 of the Laws of 1901 (RCW 79.16.160 and 79.16.170) made the area between ordinary high tide and extreme low tide on the Pacific beaches a public highway. This was recognized by Mr. and Mrs. Loomis when they used the line of ordinary or mean high tide as their westerly boundary and then identified the strip of land between this boundary and the line of mean low water as "Ocean Beach Boulevard."
That the dedicators intended to plat all of their property in government lots 1, 2, 3 and 4 is clear. They expressly so recite on the plat. The plat contains no reservation of an interest of any kind. The western boundary is referred to on the plat as being the "ordinary or mean high water line" and the course is given as running "along said mean high tide line." Even the name of the plat "Ocean Park Beach" signifies that it is waterfront property.
[1] In construing a plat, the intention of the dedicators, as adduced from the plat itself, controls. In Frye v. King Cy. 151 Wash. 179, 182, 275 Pac. 547, 62 A.L.R. 476 (1929), we said:
It is the well settled law that, in construing a plat, the intention of the dedicator controls. The rule has been stated to be: "The intention of the owner is the very essence of every dedication." City of Palmetto v. Katsch, 86 Fla. 506, 98 South. 352.
See, also, McCoy v. Thompson, 84 Ore. 141, 164 Pac. 589; Van Wieren v. Macatawa Resort Co., 235 Mich. 606, 209 N.W. 825; East Birmingham Realty Co. v. Birmingham Machine & Foundry Co., 160 Ala. 461, 49 South. 448; Ft. Smith & Van Buren Bridge Dist. v. Scott, 111 Ark. 449, 163 S.W. 1137; Ramstad v. Carr, 31 N.D. 504, 154 N.W. 195; Humphrey v. Krutz, 77 Wash. 152, 137 Pac. 806.
But this intention must be adduced from the plat itself, where possible, as that furnishes the best evidence thereof.
See, also, Tsubota v. Gunkel, 58 Wn.2d 586, 364 P.2d 549 (1961).
*15 [2] Not only is it clear that the dedicators intended that the platted property extend to the line of high tide but the applicable rule of law calls for the same result. Courses and distances yield to natural and ascertained objects.
A case in point is State ex rel. Davis v. Superior Court, 84 Wash. 252, 146 Pac. 609 (1915). Davis was the owner of block B in Wallace's addition to the town of Kelso. In the plat, the boundaries of that addition were described in part as "... running thence east on the north boundary of said claim 1948.3 feet to the Coweman slough; thence with the meanders of said slough (various courses and distances), thence leaving the slough (various courses and distances) to the point of beginning."
Davis claimed that the boundary was the center of Coweman slough but the courses and distances established a line (and it apparently had actually been staked out by the surveyor at the time of platting) a few feet back from the bank of the slough. This court sustained the contention of Davis, saying at 257:
The description as contained in the dedication of Wallace's addition to the town of Kelso, following courses and distances, would not extend the east boundary to the center of the slough. But the rule is that course and distance must yield to natural and ascertained objects. A call for a natural object, such as a river, will control as against course and distance. In County of St. Clair v. Lovingston, 23 Wall. 46, 62, it is said:
"It is a universal rule that course and distance yield to natural and ascertained objects. A call for a natural object as a river, a spring, or even a marked line, will control both course and distance."
It follows, therefore, that in the present case the Coweman slough was the boundary, and that this would prevail as against courses and distances mentioned in the description. The stakes set by the surveyor of the plat of Wallace's addition to the town of Kelso are not mentioned in the description upon the plat. Where the stakes were set must depend upon oral testimony. If the legal effect of a description in a deed or plat could be overcome by oral testimony as to where the stakes were set by the surveyor, and what the intention of a platter was, it would many times make the title to valuable real property *16 very insecure. Davis, in puchasing block "B," had a right to rely upon the legal effect of the description.
The westerly boundary of the plat of Ocean Park Beach is the line of mean high tide. In saying this, it is not necessary to enter into a discussion whether the boundary is the line of mean high tide or the line of ordinary high tide.[1] Neither is it necessary for us to fix the exact location of the western boundary of the plat. That question (as between the respondent and the state of Washington, a party to the action but not to the appeal) has been expressly reserved by the trial court, presumably to await the final decision in Hughes v. State, 67 Wn.2d 799, 410 P.2d 20 (1966). So far as this appeal is concerned, it is sufficient to say that appellant has no right, title or interest in any property lying to the west of respondent's land in Ocean Park Beach.
The judgment is affirmed.
ROSELLINI, C.J., FINLEY, WEAVER, and HAMILTON, JJ., concur.
NOTES
[*] Reported in 421 P.2d 1021.
[] Judge Birdseye is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.
[1] See Hughes v. State, 67 Wn.2d 799, 410 P.2d 20 (1966) for a discussion of the meaning of these terms.