[No. 39032.   Department Two.   November 30, 1967.]

JOHN R. CUMMINS et al., Respondents, v. KING COUNTY, Appellant.*

Charles O. Carroll, James E. Kennedy, and J. Hartly Newsum, for appellant.

*Reported in 434 P.2d 588.

*Short, Cressman & Cable* and *Douglas R. Hartwich,* for respondents.

LAWLESS, J.†—This is a claim by the respondents, John R. Cummins and Florence A. Cummins (hereinafter referred to as plaintiffs), of inverse condemnation asserting violation of Const. art. 1, § 16 (amendment 9). The appellant, King County (hereinafter referred to as defendant), first contends that the dedicatory language and drawing contained in Pelican Park division 4 plat gives the county an easement right upon the plaintiffs' lot for a supporting slope extending 26 feet beyond the highway right of way.

The pertinent language of dedication contained on the plat is as follows:

> DESCRIPTION—This plat of Pelican Park Div 4 embraces that portion of the . . . [then follows a metes and bounds description enclosing an irregular rectangle].
>
> DEDICATION—KNOW ALL MEN BY THESE PRESENTS, that we, the undersigned owners in fee simple of the land hereby platted, hereby declare this plat and dedicate to the use of the public forever, all streets and avenues *shown thereon* and the use thereof for all public purposes not inconsistant [*sic*] with the use thereof for public highway purposes; also the right to make all necessary slopes for cuts and fills upon the lots and blocks *shown on this plat* in the original reasonable grading of the streets and avenues shown hereon. (Italics ours.)

The pertinent details of the drawing are that the rectangular plat abuts the north edge of Northeast 145th Street, which is a 60-foot strip of land owned by the county in fee and which runs east and west. The rectangular plat encompasses Northeast 146th Street, and the north side of the plat is at the center of Northeast 147th Street. Both of these streets were dedicated in the plat. The plaintiffs' lot 12 is bounded on the north by the center line of Northeast 146th Street and its south line adjoins the north edge of Northeast 145th Street.

---

†Judge Lawless is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Northeast 145th Street was constructed in 1928 as a 2-lane thoroughfare centered in the 60-foot strip. From east to west the roadway slopes down and then up in a vertical curve with lot 12 at or near the base of the curve. The grade of the street was established with a fill of about 14 feet, but because the two lanes used only a portion of the 60 feet, the sloping shoulders were within the right of way.

Pelican Park division 4 plat was dedicated in 1952 and the plaintiffs purchased lot 12 in 1958. In 1964 the defendant county decided to broaden the roadway of Northeast 145th Street to include four traffic lanes and a sidewalk on each side. The level of the grade was not changed and is not an issue. The outside edges of the sidewalks on either side exactly covered the 60-foot right of way. The supporting slope to the north formed a 14-foot high triangle with its base extending 26 feet into the backyard of lot 12. As is evident, lot 12 has access to Northeast 146th Street, but not to Northeast 145th Street.

The plaintiffs agree that the language and drawing give the county the right of a slope easement as to Northeast 146th Street or as to the south half of Northeast 147th Street in that they are within the metes and bounds description, but the plaintiffs challenge the imposition of a slope upon their lot from Northeast 145th Street in that the said street is not contained within the plat and is therefore granted nothing by the dedication.

The trial court accepted the plaintiffs' position and granted damages.

■ In construing the language of a plat dedication and the drawing we look first to the intention of the dedicator as found in the plat itself as the controlling consideration in determining what portions of his platted land he actually dedicated to the public for street purposes. *Camping Comm'n of Pac. Northwest Conference of Methodist Church v. Ocean View Land, Inc.*, 70 Wn.2d 12, 421 P.2d 1021 (1966); *Frye v. King Cy.*, 151 Wash. 179, 275 Pac. 547 (1929); 62 A.L.R. 476. However, this does not limit us to the consideration of words alone. In 26 C.J.S. *Dedication* § 49 at

519-20, the applicable rule, insofar as it may be stated in general terms, is set forth as follows:

> Plats by which dedications are made are to be . . . [interpreted] by the court as any other writing would be, . . . . They are to be construed as a whole in order that the intention of the party may be ascertained, and every part of the instrument be given effect; no part of the plats is to be rejected as . . . meaningless, if it can be avoided, and lines as well as words are to be considered. (Footnotes omitted.)

See *Osborne v. Seattle*, 52 Wash. 323, 100 Pac. 850 (1909). In determining the intention of the dedicator, "[a]n intention to dedicate will not be presumed, and a clear intention must appear." *Columbia & Puget Sound R.R. v. Seattle*, 33 Wash. 513, 519, 74 Pac. 670 (1903); *Shell v. Poulson*, 23 Wash. 535, 63 Pac. 204 (1900).

While not factually in point, we considered a similar question in *Forrester v. Fisher*, 16 Wn.2d 325, 336, 133 P.2d 516 (1943), where we stressed that a road easement was not dedicated with the plat because "[t]he strip lies beyond the enclosed north boundary line of the plat as filed."

The learned trial judge, in the instant case, concluded that in applying the foregoing principles and in considering the "well-established rule of grammar, . . . that a qualifying and limiting phrase relates only to the last antecedent; . . . ." *Smith v. Department of Labor & Indus.*, 8 Wn.2d 587, 591-92, 113 P.2d 57 (1941), that the phrase "shown hereon" refers to the term "plat" and the term "plat" is described by metes and bounds, and therefore the plat and its dedication does not relate to Northeast 145th Street.

If the surrounding circumstances are to be considered, the trial court's conclusion is strengthened. Lot 12 is without access to Northeast 145th Street and Northeast 145th Street was already held in fee by the county at the time of dedication. These factors would tend to bolster the presumption that the dedicator did not intend to burden lot 12 with a slope easement from Northeast 145th Street.

The defendant also argues that, even though the dedication excludes Northeast 145th Street, the cases of *Hagen v. Seattle*, 54 Wn.2d 218, 339 P.2d 79 (1959); *Hollenbeck v. Seattle*, 88 Wash. 322, 153 Pac. 18 (1915); and *Schuss v. Chehalis*, 82 Wash. 595, 144 Pac. 916 (1914), support the theory that the defendant has the right to improve the entire right of way, which right must necessarily include the support of a reasonable slope on adjacent property. The cited cases support the defendant's right to make "cuts" within the existing right of way if done in the absence of negligence, but do not reach the issue posed in this cause.

■ Indeed, the issue has been specifically decided against the county in answer to a similar question stated in *Donofrio v. Seattle*, 72 Wash. 178, 181, 129 Pac. 1094 (1913), which was:

> Does the city, . . . have the right in making a fill to extend the foot of the slope upon the abutting private property, . . . without first having acquired the right to do so by condemnation proceeding or by some other legal means?

This court held it to come within the purview of Const. art 1, § 16. Although the earlier cases such as *Compton v. Seattle*, 38 Wash. 514, 80 Pac. 757 (1905); *Swope v. Seattle*, 36 Wash. 113, 78 Pac. 607 (1904); and *Milwaukee Terminal Ry. v. Seattle*, 86 Wash. 102, 149 Pac. 644 (1915), engage in semantics as to whether such physical invasion is a "taking" or "damaging," a long line of later cases clearly hold the state or its subdivisions to be responsible for an interference with the right, use, and enjoyment of private property be it "taking" or "damaging." *Martin v. Port of Seattle*, 64 Wn.2d 309, 391 P.2d 540 (1964); *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960), " 'Anything which destroys any of these [ownership, possession, use, enjoyment and disposal] elements of property, to that extent destroys the property itself.' " *Ackerman v. Port of Seattle, supra*, at 409. See also *Snavely v. Goldendale*, 10 Wn.2d 453, 117 P.2d 221 (1941); *Donofrio v. Seattle, supra*; *Blankenship v. State*, 160 Wash.

514, 295 Pac. 480 (1931); *Bointano v. Snohomish Cy.,* 11 Wn.2d 664, 120 P.2d 490 (1941); *Egbers v. Seattle,* 90 Wash. 172, 155 Pac. 751 (1916). Thus it is clear that "it is a taking of private land to cover it to any considerable depth with earth. When a street is graded to its *full width* above the lot level of the surrounding land and the enbankment is allowed to slope on the adjacent property, the land so covered is taken in the constitutional sense." (Italics ours.) 2 Nichols on Eminent Domain, § 6.23(1) (3d ed. rev. 1963).

In *Kincaid v. Seattle,* 74 Wash. 617, 620-21, 134 Pac. 504, 135 Pac. 820 (1913), in a slightly different context, we discussed the same issue and said:

Whatever its method, the city has taken respondent's property for a public use . . . . The constitution does not give the right to take; that is inherent in the state. Its only office is to define the limitations to be put upon its exercise; that is, that no property shall ever be taken without compensation.

We have considered the remaining assignments of error and find them to be without merit.

For the reasons hereinabove stated, the judgment of the trial court is affirmed.

FINLEY, C. J., DONWORTH, HUNTER, and HAMILTON, JJ., concur.