[No. 5709-3-II.   Division Two.   October 27, 1983.]

RAYMOND R. NELSON, ET AL, *Appellants*, v. PACIFIC COUNTY, *Defendant*, MERLE ATKINSON, ET AL, *Respondents*.

*Dennis R. Colwell,* for appellants.

*Joel Penoyar, Robert F. Peck,* and *Paul L. Stritmatter,* for respondents.

WORSWICK, A.C.J.—Raymond R. and Virginia M. Nelson appeal a judgment of the Pacific County Superior Court which quieted title in Pacific County to certain property on Tokes Point. The dispositive issues are whether the disputed land was, in fact, ever dedicated to public use, and whether Pacific County abandoned it. We affirm.

The disputed property comprises about 17 acres lying between the southerly lines of the Santa Monica and Hollywood Additions to Tokes Point and the government meander line. It extends about ½ mile along Willapa Bay, varying in width from 175 to 480 feet. Plats for the two additions were filed in 1925 and 1926 by Lizzie and William Kindred. Language on the plats purported to dedicate the disputed property to the County as a "public highway" but the County has made little use of it.

On December 20, 1978, the Nelsons filed suit against the County to quiet title to the property, contending that it had not been validly dedicated but had been deeded to their predecessors with the remainder of the Kindreds' property. The County's answer stated that it had no "right, title, estate, lien or interest . . ." in the disputed land. In February and March 1979, the respondents, abutting land-owners, moved to intervene. Their complaints supported

the dedication and claimed, in the alternative, a right to the property by adverse possession. Thereafter, the Nelsons filed a motion for summary judgment which was contested only by the respondents. The court granted leave to intervene and denied summary judgment. The County thereafter amended its original answer, denying any intent to abandon its interest in the property. There followed a meeting between the Nelsons and the county commissioners which resulted in a "settlement" whereby the County was to receive a 60–foot–wide strip of land abutting the platted area for use as a public highway, and easements to extend the platted streets to the line of high water. After reading the agreement into the record on the day of trial, counsel for the County announced that, upon acceptance by the court, the County "will have no more interest in the case." The court accepted[1] and the County withdrew. The trial proceeded between the Nelsons and respondents. The court held that the property had been validly dedicated and had not been abandoned by the County.

The Nelsons' first principal contention here is that the trial court erred in holding that the land had been validly dedicated. We conclude the court did not err.

The bases of the dedications were two notations, one on the plat for the Hollywood Addition and one on the original plat for the Santa Monica Addition stating that the disputed property was dedicated to the County as a public highway. Also, the words "public highway" and "park" were written across the disputed property on the Hollywood plat and the original Santa Monica plat, respectively. The revised Santa Monica plat referred to the original for a description of the property but made no mention of the dedication. The Nelsons maintain these notes are suspect and, moreover, could not validly transfer the property to the County because the intent to do so is not clearly shown and because the dedicated land lies outside the area actually platted and referred to in the legal descriptions. We

---

[1]The court stated: "The compromise or whatever you call it is accepted."

disagree.

It is true that intent to dedicate will not be presumed and clear intent must be shown. *Cummins v. King Cy.,* 72 Wn.2d 624, 434 P.2d 588 (1967). However, that intent is to be deduced from the plat itself, where possible, because it furnishes the best evidence. *Frye v. King Cy.,* 151 Wash. 179, 275 P. 547, 62 A.L.R. 476 (1929); *Deaver v. Walla Walla Cy.,* 30 Wn. App. 97, 633 P.2d 90 (1981). The dedications on these plats are clear on their face but the Nelsons contend they are fakes, added later by someone other than the Kindreds or their agents. They point out certain claimed irregularities apparent on the face of the plats: a different pen was used to write one of the notes; the dedications of the disputed property are not placed with the street dedications or formally acknowledged by the Kindreds; and the revised Santa Monica plat does not contain the disputed dedication. Thus, they contend, an alteration is apparent and the respondents had the burden to explain it. *Lembo v. Federici,* 62 Wn.2d 972, 385 P.2d 312 (1963). The trial court found that the entries were not suspicious and were not alterations. Substantial evidence supports these findings.

Except for the lack of a dedication on the revised plat, the claimed discrepancies are minor and do not necessarily suggest an alteration. The two experts hired by the parties did not agree on whether the notes were made by the same person or at the same time as the rest of the plats, and it is also possible that more than one person was legitimately involved. Neither is the absence of the dedication on the revised Santa Monica plat dispositive, inasmuch as that plat referred to the original for the description of the property and the platters may have intended the two of them to be read together. Since these irregularities do not constitute a visible alteration, the Nelsons had the burden of proving that material was added to the plats after approval. *In re Estate of Wilson,* 17 Wn. App. 741, 565 P.2d 1189 (1977). They failed to do so.

The extrinsic circumstances also support the trial court's

conclusion that the Kindreds intended dedication to public use. The Kindreds never did anything else with the disputed land and did not mention it in the deed that conveyed the rest of their property to the Nelsons' predecessors. Also, the strip in dispute lies between the platted property and the bay and, in analogous situations, courts have presumed the platter intended to provide access to streets and water. *See Albee v. Yarrow Point,* 74 Wn.2d 453, 445 P.2d 340 (1968); *Tsubota v. Gunkel,* 58 Wn.2d 586, 364 P.2d 549 (1961).

Neither does the failure to include the area dedicated in the property description invalidate the dedications. RCW 58.08.015, formerly Code of 1881, § 2329, provides that a dedication will be effective if it is marked or noted on the plat. It does not foreclose the validity of a dedication simply because the land dedicated is not technically within the legally described platted area. As early as 1894, our Supreme Court held that where the dedicated property was adjacent to but outside the limits of the land described, there was an implied dedication, rebuttable by evidence of contrary intent. *Tilzie v. Haye,* 8 Wash. 187, 35 P. 583 (1894). Later cases have held such dedications invalid only because of insufficient evidence of intent to dedicate. *See Cummins v. King Cy., supra; Forrester v. Fisher,* 16 Wn.2d 325, 133 P.2d 516 (1943); *Frye v. King Cy., supra.* There is no deficiency here. There is an express dedication and no evidence of a contrary intent. The land is pictured on the plat maps and adequately described in the notes. The nature and extent of the grant can be readily determined. We perceive no reason to invalidate a dedication which has been on the records and uncontested for 50 years.

The Nelsons contend that, even if dedicated, the land was abandoned because of the County's actions in this lawsuit. Thus, they claim, it reverts to them as successors to the Kindreds. The trial court held that the "settlement" did not factually constitute abandonment. We agree with the court's conclusion. It also observed that such an "abandonment" would not be binding on the public. We agree

with this also.

The trial court's rather terse finding of fact[2] on this issue is amplified by a letter supplement to its memorandum opinion in which it said:

> I conclude that there was not abandonment, and didn't mention the point specifically inasmuch as this finding would be inherent in the court's decision. I wasn't sure at the time why the county and the Nelsons entered into the stipulation, but surmised that it was a hedge against disaster; that is, if the plaintiff prevailed, Pacific County would nevertheless have saved a right–of–way in and access to the water. In any event, I did not consider this stipulation binding as to the public.

As to the factual question, it is clear that abandonment of a property interest must be proved by clear, unequivocal and decisive evidence. The primary element to be established is an actual intent to relinquish the rights being abandoned. *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 455 P.2d 359 (1969). The trial court was not persuaded by the "settlement" and related county conduct. It was justified in concluding that the abandonment by the means contended had not been proved.

The County did not manifest a clear intent to relinquish its interest in the property. Its actions were equivocal at best. Although in its original answer to the Nelsons' complaint, it did state that it claimed no right, title or interest in the land, it explained its position to respondents' counsel as a desire to remain neutral in the lawsuit. Thereafter it amended its original answer, denying any intent to abandon its interest. Even after it had reached a settlement with the Nelsons, it spoke only of relinquishing its interest in the lawsuit. The trial judge's characterization of that maneuver as only a "hedge against disaster," the attempt to preserve some part of the land for the public in case the Nelsons were successful on the dedication issue, was a reasonable conclusion.

---

[2] "10. The County has not abandoned the dedications as set forth on the face of the two plats."

■ Moreover, we conclude that the County may not abandon dedicated property in this manner. Unquestionably the County may compromise claims arising out of subject matter concerning which it has the general power to contract. *Warburton v. Tacoma Sch. Dist. 10,* 55 Wn.2d 746, 350 P.2d 161 (1960). The Nelsons' position is flawed, however, because the alienation of dedicated public property cannot be accomplished by contract. Property once acquired and devoted to public use is held in trust for the public and cannot be alienated without legislative authority, either express or implied. *Commercial Waterway Dist. 1 v. Permanente Cement Co.,* 61 Wn.2d 509, 379 P.2d 178 (1963). The Legislature has expressly provided for the disposition of lands held by the County in its governmental capacity. Numerous sections in RCW Title 36 deal with this subject.

Under RCW 36.34, county property cannot be sold or disposed of without notice (36.34.020–.030) and a public hearing (36.34.040), with certain exceptions not relevant here.[3] More specific provisions apply to parks and county roads. RCW 36.68.010 provides that a county's sale and lease of park property is subject to the requirements for notice and public hearings detailed in RCW 36.34. RCW 36.87.020–.060 provide that before a county can abandon a road or any part thereof, it must require a study and report by the county engineer and hold a public hearing on the proposed vacation. RCW 36.87.130 specifically provides that no county road which abuts on a body of water may be abandoned, unless the purpose is to enable some public authority to acquire the land for port purposes, boat moor-

---

[3]Those exceptions are stated in RCW 36.34.020:

"(1) When selling to a governmental agency;

"(2) When personal property to be disposed of is to be traded in upon the purchase of a like article;

"(3) When the value of the property to be sold is less than five hundred dollars;

"(4) When the board by a resolution setting forth the facts has declared an emergency to exist; . . ."

ings and launch sites, or park and recreational purposes. The provisions are comprehensive and demonstrate a strong legislative intent that property held for the public use and benefit not be summarily disposed of without giving the public affected a significant opportunity to participate.

*Johnston v. Medina Imp. Club, Inc.,* 10 Wn.2d 44, 116 P.2d 272 (1941), upon which the Nelsons rely, does not hold otherwise. The issue of abandonment there was minor and secondary to the principal issues presented which involved standing. The propriety of the abandonment was not questioned.

*Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968) is likewise not controlling. There the court upheld an exchange of a dedicated right of way for a more desirable parcel nearby. It pointed out that the County had not followed the statutory methods for vacating and acquiring the properties, but held the action to be merely an irregular and unauthorized manner of exercising the broad powers granted to counties to build and operate roads. However, the County was neither giving up a specific use, provided for in the dedication, nor losing any quantity of land; in fact it received more land than it relinquished. No expectations were compromised by that transaction, and the procedural protections were not necessary. The opposite is true here. The statutory procedures were necessary to protect the interests of respondents and other members of the public in that area. They were ignored and we will not sanction the alienation of public property by shortcuts which exclude important safeguards.

The Nelsons also claim the trial court erred in allowing intervention and in denying summary judgment. We disagree.

Under RCW 4.08.190:

Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation in the success of either party, or an interest against both.

CR 24(b)(2) provides that in exercising its discretion in the matter of intervention, the court shall consider whether the intervention will unduly delay or prejudice the determination of the rights of the original parties. Intervention here was entirely appropriate.

Respondents obviously had an interest in the litigation. They had relied upon the dedications as a guaranty that there would be no development between them and the water, and that they would have access to the tidelands, sections of which some of them had purchased. They had used the disputed area for picnicking and horseback riding. Although their intervention may have delayed the lawsuit against the County somewhat, it did not prejudice the Nelsons' interest. If they had prevailed against the County, they would still have had to deal with the respondents' claims.

It follows that summary judgment was properly denied. Once in the case, respondents by affidavits raised a number of triable issues.

Affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied November 28, 1983.

Review denied by Supreme Court January 20, 1984.